**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANTHONY J. BROADWATER,

                                      Plaintiff,

v.    5:22-cv-1241 (BKS/TWD)

THE COUNTY OF ONONDAGA, THE CITY OF SYRACUSE, ASSISTANT DISTRICT ATTORNEY GAIL UEBELHOER, in her individual capacity, WENDY S. LOUGNOT, as the Administrator of the Estate of Syracuse Police Department Detective GEORGE LORENZ, in his individual capacity, and JOHN DOES 1–5, names and numbers of whom are yet to be determined,

                                      Defendants.

---

THE CITY OF SYRACUSE and WENDY S. LOUGNOT, as the Administrator of the Estate of Syracuse Police Department Detective GEORGE LORENZ,

                                      Cross-Claimants,

v.

THE COUNTY OF ONONDAGA and ASSISTANT DISTRICT ATTORNEY GAIL UEBELHOER, in her individual capacity,

                                      Cross-Defendants.

---

**Appearances:**

*For Plaintiff:*
Andrew G. Celli Jr.
Earl S. Ward
Max Selver
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020

J. David Hammond
Carden Dotzler Hammond, PLLC
100 Madison Street
Tower 1, Floor 12
Syracuse, New York 13202

Melissa K. Swartz
Cambareri & Brenneck
300 South State Street, First Floor
Syracuse, New York 13202

*For Defendants and Cross-Defendants County of Onondaga and Gail Uebelhoer:*
John A. Sickinger
Senior Deputy County Attorney
Onondaga County Department of Law
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, New York 13202

*For Defendants and Cross-Claimants City of Syracuse and Wendy S. Lougnot, as the Administrator of the Estate of Syracuse Police Department Detective George Lorenz:*
Susan R. Katzoff
Corporation Counsel, City of Syracuse
Danielle R. Smith
Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiff Anthony J. Broadwater brings this action under 42 U.S.C. § 1983 and New York State law asserting claims of (1) denial of a fair trial in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, and Fourteenth Amendments against Defendants Gail Uebelhoer, Wendy S. Lougnot, as the Administrator of the Estate of Syracuse Police Department

Detective George Lorenz;[1] (2) malicious prosecution under 42 U.S.C. § 1983 against Defendants Uebelhoer and Lorenz; and (3) malicious prosecution under New York State law against Defendants County of Onondaga and City of Syracuse. (Dkt. No. 27.) Defendants City of Syracuse and Lorenz answered the first amended complaint and asserted a cross-claim against Defendants County of Onondaga and Uebelhoer for apportionment, indemnification, and contribution. (Dkt. No. 38.) Defendants County of Onondaga and Uebelhoer moved to dismiss the first amended complaint under Rule 12(b)(6), (Dkt. No. 37), and moved to dismiss the cross-claim under Rule 12(b)(6), (Dkt. No. 40). The motions are fully briefed. (Dkt. Nos. 41, 42-1, 43.) For the reasons that follow, the Court denies Defendants County of Onondaga and Uebelhoer's motion to dismiss the first amended complaint and denies Defendants County of Onondaga and Uebelhoer's motion to dismiss the cross-claim.

## II.   FACTS[2]

### A.   Underlying Incident

On May 8, 1981, Victim[3] was assaulted and raped in Syracuse, New York. (Dkt. No. 27, ¶ 29.) Victim reported the incident to police that day. (*Id.*) Around that time, Victim submitted an affidavit that included a brief description of the perpetrator. (*Id.*)

### B.   Investigation and Prosecution of Plaintiff

On October 5, 1981, Victim walked by Plaintiff on Marshall Street in Syracuse and believed that Plaintiff was the man who had raped her. (*Id.* ¶ 30.) Victim reported the encounter

---

[1] For the purposes of this Memorandum-Decision and Order, the Court will refer to "Defendant Lorenz" or "Cross-Claimant Lorenz."

[2] These facts, which are limited to the facts relevant to the motions to dismiss presently before the Court, are drawn from the first amended complaint. (Dkt. No. 27.) The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Pursuant to Local Rule 5.2, victims of sexual assault are not personally identified. *See* N.D.N.Y. L.R. 5.2(a)(6).

to the police. (*Id.*) Victim submitted an affidavit stating that she believed "that the black male might be the person that raped [her]." (*Id.*) Victim provided police with a sketch and a description that was "much more detailed than her original description from May." (*Id.* ¶ 31.)

On October 14, 1981, police arrested and charged Plaintiff with Victim's rape. (*Id.* ¶ 33.) Defendant Lorenz was assigned as the lead detective on the case. (*Id.* ¶ 34.)

After his arrest, Plaintiff "'insisted on a lineup procedure,' according to a note in the case file by" Defendant Uebelhoer. (*Id.* ¶ 35.) Plaintiff voluntarily participated in a police-arranged lineup procedure on November 4, 1981, in the presence of Plaintiff's defense counsel. (*Id.* ¶ 36.) Defendants Lorenz and Uebelhoer were also present at the lineup. (*Id.* ¶ 37.) Upon reviewing the proposed lineup, Plaintiff and his attorney "had concerns about its fairness" and requested that one of the "fillers, who did not match [Victim]'s description, be substituted by another individual who had been in the holding cell with [Plaintiff] that day." (*Id.* ¶ 38.) Plaintiff's attorney placed the individual requested by Plaintiff in the lineup "in position number five." (*Id.*) Plaintiff was placed "as person number four." (*Id.* ¶ 39.) "Apparently believing that person number five did not look like" Plaintiff, Defendant Uebelhoer "noted for the record that person number five had facial hair." (*Id.*)

Victim entered the lineup viewing room and spent five minutes examining each individual. (*Id.* ¶ 40.) At one point during her five-minute examination, she asked all of the men to turn to the left. (*Id.*) Victim then identified person number five as the person who had raped her in May 1981. (*Id.* ¶ 41.) Victim "appeared sure of her choice, showing 'no doubt or concern' nor 'any belief that this selection she was making was tentative or laced with uncertainty,' according to [Plaintiff]'s attorney." (*Id.*) Victim signed and dated the form provided to her stating that person number five was her rapist. (*Id.*)

4

After the lineup, Victim entered a separate conference room. (*Id.* ¶ 42.) Defendant Lorenz, "looking 'downcast,'" was the first person to enter the conference room after Victim. (*Id.* ¶¶ 42–43.) Victim "took his cue" and asked: "it was four, wasn't it?" (*Id.* ¶ 43.) Defendant Lorenz "confirmed that [Victim] had picked the wrong person by responding, 'You were in a hurry to get out of there.'" (*Id.* ¶ 44.) Defendant Uebelhoer then "entered the room 'angry,' according to [Victim]." (*Id.* ¶ 45.) Defendant Uebelhoer stated: "Well we got the hair out of the bastard." (*Id.*) Victim told Defendant Uebelhoer that "Officer Lorenz told me I chose the wrong one." (*Id.* ¶ 46.) Defendant Lorenz then told Defendant Uebelhoer that Victim "thinks it was four." (*Id.* ¶ 46.) Defendant Uebelhoer "turned to [Victim] and said, 'Of course you chose the wrong one . . . He and his attorney worked to make sure you'd never have a chance.'" (*Id.* ¶ 47 (second alteration in original).) Defendant Lorenz "did not correct the false statement by [Defendant] Uebelhoer and failed to document and memorialize this conversation." (*Id.* ¶ 48.) Defendant Uebelhoer "then stated, falsely, that [Plaintiff] 'had his friend come down and stand next to him. We had to send a car to the prison to get him here. They wouldn't go ahead until he showed . . . They really worked a number on you. He uses that friend, or that friend uses him, in every lineup they do. They're dead ringers.'" (*Id.* ¶ 49 (second alteration in original).) Defendant Uebelhoer's "proclamation that these two Black men were 'dead ringers' conflicted with her statement moments before, that facial hair made them easily distinguishable." (*Id.* ¶ 50.) As Defendant Uebelhoer "continued to make these false statements," Defendant Lorenz "again did nothing to stop [Defendant] Uebelhoer and again did not document what he witnessed." (*Id.* ¶ 51.) "Nor did [Defendant Lorenz] ever report [Defendant] Uebelhoer's false, misleading, and improper statements, whose only purpose was to lead [Victim] to falsely identify Plaintiff as her rapist." (*Id.*)

5

Defendant Uebelhoer "next speculated that person number five purposefully looked scary to 'psyche [Victim] out' while [Plaintiff] looked innocently downward." (*Id.* ¶ 52.) Defendant Uebelhoer told Victim that this "was a carefully orchestrated trick to dissuade [Victim] from choosing the correct person in the lineup." (*Id.*) Defendant Uebelhoer told Victim that Defendant Uebelhoer "objected to person number five because he and [Plaintiff] looked too much alike, even though [Defendant Uebelhoer] had previously noted that person number five looked dissimilar to [Plaintiff] because of his facial hair." (*Id.*) Defendant Lorenz "participated in this improper conversation and he purposefully omitted the substance of it from his sworn police report" and "never reported it to anyone." (*Id.* ¶ 53.)

Neither Plaintiff nor his defense attorney were present throughout this conversation involving Defendant Lorenz, Defendant Uebelhoer, and Victim. (*Id.* ¶ 54.) Neither Defendant Lorenz nor Defendant Uebelhoer reported this conversation to Plaintiff or his defense attorney, and there is no "contemporaneous documentary record of this conversation." (*Id.* ¶¶ 55–56.)

On November 17, 1981, Plaintiff was indicted on eight counts, including rape in the first degree. (*Id.* ¶ 61.) The case proceeded to a two-day bench trial in May 1982. (*Id.* ¶¶ 62, 65.) Assistant District Attorney William Mastine "was the lead prosecutor on the case and presented the case and questioned the witnesses." (*Id.* ¶ 63.) Defendant Lorenz never informed Mastine about the conversation that took place after the lineup. (*Id.* ¶ 64.)

"The only evidence connecting [Plaintiff] to the rape presented at trial was [Victim's] belated and improperly procured cross-racial in-court identification, along with faulty testimony from microscopic hair analyst Stephen Kaszubinski." (*Id.* ¶ 66.) At trial, Victim identified Plaintiff "as the person who raped her for the first time since she saw [Plaintiff] on Marshall Street eight months earlier." (*Id.* ¶ 67.) Plaintiff "was the only Black person in the courtroom that

6

day." (*Id.*) Plaintiff's defense counsel "questioned [Victim] on the identification of person number five as her rapist at the lineup," but "he could not cross-examine [Victim] about the . . . post-identification conversation between [Defendant] Uebelhoer[] and [Defendant] Lorenz because [Defendant] Uebelhoer never disclosed that conversation to defense counsel and [Defendant] Lorenz did not document it in any police report or report it to ADA Mastine." (*Id.* ¶ 68.) "In summation, ADA Mastine sought to explain the lineup misidentification by alleging [Plaintiff] and his counsel manipulated the lineup to 'confuse the victim'" and "argued that it was [Plaintiff] and his defense counsel who were responsible for [Victim's] failure to identify Plaintiff as the perpetrator." (*Id.* ¶ 69.) "Plaintiff was unable to explain to the judge in response to ADA Mastine's summation that Defendants had procured [Victim's] identification through improper means because of [Defendants] Lorenz and Uebelhoer's failure to document or disclose the conversation to ADA Mastine." (*Id.* ¶ 70.)

Based on Victim's identification testimony, "which was influenced by Defendants Lorenz and Uebelhoer's undisclosed and undocumented improper conversation with [Victim]" and the "erroneous hair analysis, the court found [Plaintiff] guilty of rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, robbery in the first degree, robbery in the second degree, assault in the second degree, and assault in the second degree." (*Id.* ¶ 73.) The court sentenced Plaintiff "to the maximum allowable indeterminate sentence on the top count of rape in the first degree, to run concurrent to the sentences imposed on the remaining convictions." (*Id.* 74.)

    **C.**    **Vacatur of Plaintiff's Convictions**

Plaintiff maintained his innocence while spending over sixteen years in prison. (*Id.* ¶¶ 75–77.) Plaintiff was released from prison "after reaching his maximum conditional release on December 31, 1998." (*Id.* ¶ 84.)

7

On November 10, 2021, Plaintiff filed a motion to vacate his conviction under New York Criminal Procedure Law section 440 based on Victim's "improperly procured in-court identification as a result of Defendants Lorenz and Uebelhoer's misconduct during his line-up identification procedure, as well as the faulty scientific testimony." (*Id.* ¶ 87.) On November 17, 2021, Onondaga County District Attorney William Fitzpatrick "submitted an answering affirmation joining in [Plaintiff]'s motion to vacate his conviction." (*Id.* ¶ 88.) On November 22, 2021, Justice Gordon J. Cuffy in the New York State Supreme Court, Onondaga County, vacated Plaintiff's convictions and dismissed the indictment against him. (*Id.* ¶¶ 89, 91.) "As he vacated the conviction, [Justice Cuffy] explicitly stated that 'this case involved both an apparently tainted in-court identification and now debunk[ed] hair analysis evidence[;] [e]ach of these seemingly flawed pieces of evidence were the primary foundation of [Plaintiff]'s conviction." (*Id.* ¶ 91.)

### III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

### A. Motion to Dismiss the First Amended Complaint

Defendants County of Onondaga and Uebelhoer move to dismiss the first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 37.) They argue that Defendant Uebelhoer, as an assistant district attorney, is absolutely immune from suit and that Defendant County of Onondaga is not liable for the prosecutorial actions of prosecutors within the county. (Dkt. No. 37-1, at 6–14.) Plaintiff asserts that absolute prosecutorial immunity does not apply to Defendant Uebelhoer and that Defendant County of Onondaga is vicariously liable for the actions of its prosecutors under New York law. (Dkt. No. 41, at 11–17.)

#### 1. Prosecutorial Immunity

Defendants County of Onondaga and Uebelhoer argue that Defendant Uebelhoer's alleged acts of "attending a line-up" and "coerci[ng] . . . a witness (in this case, Victim)" are "intimately associated with the judicial phase of the criminal process," and Defendant Uebelhoer is therefore entitled to absolute immunity from suit arising under § 1983 or state law for money damages. (Dkt. No. 37-1, at 6–12 (quoting *Coakley v. 42nd Pct. Case 458*, No. 08-cv-6206, 2009 WL 3095529, at *9, 2009 U.S. Dist. LEXIS 89437, at *27 (S.D.N.Y. Aug. 21, 2009), *report and recommendation adopted*, 2009 WL 3095529, at *1, 2009 U.S. Dist. LEXIS 89372, at *1 (S.D.N.Y. Sep. 27, 2009)); *see also* Dkt. No. 43, at 4–8.) Plaintiff responds that Defendant Uebelhoer is not entitled to absolute prosecutorial immunity because Defendant Uebelhoer was performing "an investigatory, not prosecutorial, function at the time of her unconstitutional conduct." (Dkt. No. 41, at 12.)

9

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The same is true with respect to a civil suit for damages under state law. *See Shmueli v. City of New York*, 424 F.3d 231, 238 (2d Cir. 2005). The Second Circuit has made clear that prosecutors acting in advocative roles within the scope of their duties enjoy such absolute immunity—only those acting "without any colorable claim of authority" are denied absolute immunity. *See Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) (quoting *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989)). Absolute immunity does not, however, cover "a prosecutor's acts of investigation or administration," *see Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994), which are "protected only by qualified, rather than absolute, immunity," *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *see also Bernard*, 356 F.3d at 502 ("[O]nly qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions." (quoting *Imbler*, 424 U.S. at 430)). Courts apply a "functional approach" to claims of absolute immunity, focusing on "the nature of the function performed." *Bernard*, 356 F.3d at 503 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The "official who asserts absolute immunity from § 1983 shoulders the burden of establishing the existence of immunity for the function in question." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).

"A prosecutor acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all acts 'intimately associated with the judicial phase of the criminal process.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler*, 424 U.S. at 430). "The Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include 'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular

10

defendants, which witnesses to call, and what other evidence to present.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler*, 424 U.S. at 431 n.33). "[A]bsolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial,'" *see Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) (second alteration in original) (quoting *Dory*, 25 F.3d at 83), *cert. denied*, 143 S. Ct. 1781 (2023), or to a grand jury, provided there is no "prosecutorial involvement in its earlier inducement," *see Bernard*, 356 F.3d at 503, 506.

As an initial matter, Defendants County of Onondaga and Uebelhoer's argument that a prosecutor's act of attending a lineup is protected by absolutely immunity, (Dkt. No. 37-1, at 8), is irrelevant; as these Defendants acknowledge, "the conversation Uebelhoer allegedly had with Victim, which forms the basis for Plaintiff's clams against Uebelhoer, occurred *after* the lineup procedure had concluded," (Dkt. No. 43, at 5). It is therefore Defendant Uebelhoer's conduct immediately after the line-up—and, more precisely, the function in which Defendant Uebelhoer was acting—on which the Court's analysis must focus.

Defendants County of Onondaga and Uebelhoer argue that the "falsification of evidence and the coercion of witnesses are prosecutorial acts for which absolute immunity applies." (Dkt. No. 37-1, at 10 (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2016)).) But that proposition oversimplifies the analysis required in determining *the function* in which a prosecutor is engaged when evidence is falsified or witnesses are coerced. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Werkheiser v. County of Broome*, 655 F. Supp. 3d 88, 101 (N.D.N.Y. 2023) (quoting *Buckley*, 509 U.S. at 273). Accordingly, "in presenting the State's case, the prosecutor is immune from a civil suit for damages." *Imbler*, 424 U.S. at 431. So too is a prosecutor who,

11

"function[ing] as an advocate," conspires to present—and, indeed, presents—falsified evidence or coerced testimony to a grand jury or at trial. *See Hill*, 45 F.3d at 661; *Anilao*, 27 F.4th at 864; *Dory*, 25 F.3d at 83.

By contrast, "pre-arraignment actions—such as interviewing a witness to obtain probable cause for an arrest—are not entitled to the protections of absolute immunity." *Werkheiser*, 655 F. Supp. 3d at 101 (citing *Hill*, 45 F.3d at 658, 661). Accordingly, "a prosecutor 'neither is, nor should consider himself to be, an advocate'" in "fabricating evidence during the preliminary investigation of a crime." *See Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 261, 274). And "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill*, 45 F.3d at 663 (citing *Lawson v. Abrams*, 863 F.2d 260, 263 (2d Cir. 1988)); *accord Anilao v. Spota*, 774 F. Supp. 2d 457, 485 (E.D.N.Y. 2011), *aff'd*, 27 F.4th 855 (2d Cir. 2022).

Here, based on the first amended complaint, probable cause to arrest Plaintiff resulted from Victim's identification of him on Marshall Street, and Plaintiff was, based on that identification, arrested. (Dkt. No. 27, ¶¶ 30, 33.) Thus, the circumstances before the Court differ from instances in which a prosecutor falsifies evidence or coerces witnesses in order to obtain probable cause *to arrest*, in which case absolute immunity does not apply. *See Buckley,* 509 U.S. at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."); *see also Hill*, 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts"). But Victim subsequently failed to

identify Plaintiff in a police line-up as the perpetrator of her rape, (Dkt. No. 27, ¶ 41), and at that point, drawing all reasonable inferences in Plaintiff's favor, there existed no evidence other than Victim's initial identification that linked Plaintiff to Victim's rape.[4] Plaintiff argues that at that time, there was no longer probable cause for Plaintiff's arrest. (Dkt. No. 41, at 15 (citing, inter alia, *People v. Cook*, 791 N.Y.S.2d 871, 2004 WL 1592811, *10 (Sup. Ct. July 12, 2004) (Table), *aff'd*, 859 N.Y.S.2d 181 (2008).) Plaintiff notes that a prosecutor is not "an advocate before he has probable cause to have anyone arrested," (*Id.* at 14 (quoting *Buckley*, 509 U.S. at 274)), and that "a prosecutor acts in an investigatory rather than prosecutorial function after evidence has surfaced that eliminates the prior basis for probable cause," (*id.*). Defendants have not responded to this argument.

Defendants argue that Defendant Uebelhoer was "preparing Victim to testify before a grand jury" during the conversation at issue and that Plaintiff's "chief complaint" against Defendant Uebelhoer "is that she allegedly coerced Victim into providing inaccurate testimony at trial and while appearing before the grand jury." (Dkt. No. 43, at 5.) But there is nothing in the first amended complaint from which the Court could infer that the conversation involving Defendants Uebelhoer and Lorenz and Victim occurred in the context of preparing Victim to testify before a grand jury or at trial. Plaintiff was not indicted for nearly two weeks after the lineup. (Dkt. No. 27, ¶ 61.) The first amended complaint does not contain any reference to a grand jury, and a different prosecutor is alleged to have presented the case at trial. (*Id.* ¶ 63).[5]

---

[4] While Defendant Uebelhoer stated at that time that "we got the hair out of the bastard," (*id.* ¶ 45), it would not be a reasonable inference from this lone allegation that the hair had yet been analyzed or matched to any evidence obtained from Victim or the scene of Victim's rape.

[5] The Court will not consider Defendants County of Onondaga and Uebelhoer's reference to "Victim's book" in support of their conclusion, (Dkt. No. 43, at 5 n.1), because "consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), and "documents attached to the complaint as exhibits," *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). While a court may consider an extrinsic document "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)

13

Given these unique circumstances, because it "may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or investigatory role," the Court cannot decide the question of absolute immunity as a matter of law, and Defendants motion to dismiss the first amended complaint as to Defendant Uebelhoer is denied.

### 2. County Liability

Defendants County of Onondaga and Uebelhoer argue that Defendant County of Onondaga "is not liable in the case at bar because a county is not liable for the prosecutorial actions of a district attorney acting within that county." (Dkt. No. 37-1, at 12.) Plaintiff argues that Defendant County of Onondaga is liable for state-law malicious prosecution because, under New York law, "vicarious liability applies to individual misconduct by prosecutors so long as it is not undertaken in the course of 'prosecuting a criminal action.'" (Dkt. No. 41, at 17 (quoting *Claude H. v. County of Oneida*, 626 N.Y.S.2d 933, 935 (App. Div. 1995)).)

Defendants premise their argument on *Baez v. Hennessy* and other cases involving *Monell* liability claims against counties under § 1983, *see* 853 F.2d 73, 74, 76–77 (2d Cir. 1988); *Joyner v. County of Cayuga*, No. 20-cv-60, 2020 WL 1904088, at *1, *10, 2020 U.S. Dist. LEXIS 67673, at *1, *25 (N.D.N.Y. Apr. 17, 2020); *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 291, 294 (S.D.N.Y. 2005); *McKeon v. Daley*, 101 F. Supp. 2d 79, 92 (N.D.N.Y. 2000).[6] And Defendants are correct that under Second Circuit precedent, "[w]hen

---

(quoting *DiFolco*, 622 F.3d at 111 (internal quotation marks omitted)), "[m]erely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (second alteration in original) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)). Plaintiff refers briefly to Victim's book once in the first amended complaint, (Dkt. No. 27, ¶ 56), but does not incorporate it by reference or attach it as an exhibit. Nor is it clear from the first amended complaint that Plaintiff relies heavily on the book's terms or effect. Accordingly, the Court will not consider it at this stage of the proceedings.

[6] Defendants County of Onondaga and Uebelhoer also cite a New York Supreme Court case involving an entirely separate inquiry—the permissibility of delegation by county legislature of jurisdiction and duties in excess of those prescribed in county law, *see Davis Const. Corp. v. Suffolk County*, 447 N.Y.S.2d 355, 357 (Sup. Ct. 1982), *aff'd*, 464 N.Y.S.2d 519 (1983)—which is irrelevant to the issue before the Court.

prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county," *Baez v. Hennessy*, 853 F.2d at 77, and therefore, a "county c[annot] be held legally responsible for injuries that the prosecutor had caused" in the context of a § 1983 *Monell* claim, *see Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019).

But here, Plaintiff has not brought a § 1983 *Monell* claim; Plaintiff brings only a state-law claim for malicious prosecution against Defendant County of Onondaga, (Dkt. No. 27, ¶¶ 120–26).[7] Therefore, Defendants argument premised on cases involving § 1983 *Monell* liability misses the mark.[8] The proper inquiry, instead, is whether a county may be held liable for a state-law claim under the theory of respondeat superior where its prosecutor faces liability for conduct "outside his quasi-judicial role"—that is, conduct that does not entitle the prosecutor to absolute immunity. *See Claude H.*, 626 N.Y.S.2d at 935.

Under New York law, "[i]t is well established that a District Attorney is a local officer of the county rather than of the State." *Claude H.*, 626 N.Y.S.2d at 935 (citations omitted); *see also Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998) (collecting cases and concluding that "[u]nder New York law, DAs and ADAs are generally presumed to be local county officers, not state officers"). And under New York law, where a county prosecutor is potentially liable—that is, where a prosecutor does not enjoy absolute immunity—"the County may be held vicariously liable." *See Claude H.*, 626 N.Y.S.2d at 936 (citations omitted).

---

[7] Plaintiff's § 1983 claims are brought against only Defendants Uebelhoer and Lorenz, not Defendant County of Onondaga. (*Id.* ¶¶ 92–119.)

[8] Defendants County of Onondaga and Uebelhoer also fail to distinguish between county liability for a prosecutor's conduct that is prosecutorial (and for which the prosecutor therefore enjoys absolute immunity) and conduct that is investigative (for which absolutely immunity is unavailable).

15

The Court has already determined that it cannot find, as a matter of law, that Defendant Uebelhoer is absolutely immune from liability;[9] Defendant Uebelhoer therefore faces "potential liability," *see Claude H.*, 626 N.Y.S.2d at 936. "Because of [Defendant Uebelhoer's] potential liability, the County may be held vicariously liable." *See id*. Accordingly, Defendants County of Onondaga and Uebelhoer's motion to dismiss the first amended complaint as to Defendant County of Onondaga is denied.

### B.     Motion to Dismiss the Cross-Claim

Cross-Defendants County of Onondaga and Uebelhoer move to dismiss the cross-claim for apportionment, indemnification, and contribution contained in Cross-Claimants City of Syracuse and Lorenz's answer to the first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 40.) Cross-Defendants argue that, for the same reasons provided in support of the motion to dismiss the first amended complaint, (Dkt. No. 37-1), Cross-Defendant Uebelhoer is absolutely immune from suit and Cross-Defendant County of Onondaga is not liable for the prosecutorial actions of prosecutors within the county. (Dkt. No. 40-1, at 4–5.) They also argue that the cross-claim "fails to meet the pleading requirements of Federal Rule of Civil Procedure 8." (*Id.* at 6–7.) Cross-Claimants "take no position" on the motion to dismiss the first amended complaint and "do not object to the simultaneous dismissal of their cross-claims" if the Court dismisses the first amended complaint but argue that if the motion to dismiss the first amended complaint is denied, Cross-Defendants' motion to dismiss the cross-claim should also be denied. (Dkt. No. 42-1, at 4–5.) Alternatively, Cross-Claimants seek to leave amend their cross-claim. (*Id.* at 5.)

---

[9] Federal law of immunity, as applied in the Court's above analysis involving Defendant Uebelhoer, applies even where the underlying claim relies on state law. *See Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010).

The Court has already denied Defendants County of Onondaga and Uebelhoer's motion to dismiss the first amended complaint, and their first argument, which relies on the same premise, is therefore unavailing. As to their argument that the cross-claim fails to adhere to Rule 8, the Court is unconvinced.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to "give "'fair notice' of the claims asserted." *See Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (summary order) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, but a court should not dismiss a pleading if it has stated "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

Here, Cross-Defendants are correct that the cross-claim is laid out in two short paragraphs that themselves do not contain factual allegations. (Dkt. No. 38, ¶¶ 166–67.) However, the cross-claim refers to the facts "as set forth in the Amended Complaint," (*id.* ¶ 166), thereby incorporating by reference the factual allegations contained in the first amended complaint. *See In re In-Store Advert. Sec. Litig.*, 878 F. Supp. 645, 650–51 (S.D.N.Y. 1995); *cf. 380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 234 (S.D.N.Y. 2008) ("The Cross Claims refer to and incorporate by reference the Complaint."). The first amended complaint contains detailed factual allegations as to the conduct of both Cross-Claimant Lorenz and Cross-Defendant Uebelhoer as well as the relationships among Cross-Claimaints City of Syracuse and Lorenz, Cross-Defendants County of Onondaga and Uebelhoer, Plaintiff, and Victim. (*See generally* Dkt. No. 27.) Thus, the cross-claim constitutes a short and plain statement

of the claim against Cross-Defendants and gives Cross-Defendants fair notice of the claim asserted. Accordingly, Cross-Defendants County of Onondaga and Uebelhoer's motion to dismiss the cross-claim is denied

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants County of Onondaga and Uebelhoer's motion to dismiss the first amended complaint, (Dkt. No. 37), is **DENIED**; and it is further

**ORDERED** that Cross-Defendants County of Onondaga and Uebelhoer's motion to dismiss the cross-claim, (Dkt. No. 40), is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 11, 2024
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge